# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
### WESTERN DIVISION

| | | |
|---|---|---|
| **TESCO PROPERTIES, INC., and**<br>**PEPPER TREE – MEMPHIS, LTD.** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **AMY WEIRICH, in her official capacity** | ) | **Case No. 2:21-cv-02743-JTF-atc** |
| **as 30th Judicial District Attorney General,** | ) | |
| **JENNIFER SINK,  in her official capacity** | ) | |
| **as Chief Legal Officer for the City of** | ) | |
| **Memphis, and CITY OF MEMPHIS** | ) | |
| **TESCO PROPERTIES, INC.** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **UNITED STATES DEPARTMENT** | ) | |
| **OF HOUSING AND URBAN** | ) | |
| **DEVELOPMENT** | ) | |
| | ) | |
| **Defendants,** | ) | |

## ORDER GRANTING IN PART AND DENYING IN PART EMERGENCY MOTION
## FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Before the Court is Consolidated Case Defendants' Emergency Motion For Temporary Restraining Order and Preliminary Injunction, filed on August 18, 2022. (ECF No. 82.) The Defendants filed a Response to the Motion on August 23, 2022. (ECF No. 86.) A hearing on the motion was held the next day on August 24, 2022. (ECF No. 87.) For good cause shown, the Motion is **GRANTED IN PART AND DENIED IN PART**.

# I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This case involves a nuisance action filed by Consolidated Case Defendants City of Memphis and the State of Tennessee, ex rel. Amy Weirich, District Attorney for the Thirtieth Judicial District of Tennessee at Memphis (collectively, "the City") against Peppertree Apartments, Pepper Tree – Memphis LTD, and TESCO Properties, Inc. (ECF No. 1.) The City's complaint alleges a nuisance claim over crime and safety concerns at Peppertree Apartments, a federally subsidized housing complex in Memphis, Tennessee. (*Id.*) The City seeks to abate the nuisance they allege exists at Peppertree. The case was initially filed in Shelby County Environmental Court. The Environmental Court entered a Temporary Restraining Order ("TRO") on November 22, 2021, which prohibited Peppertree from accepting new tenants but allowed current tenants to stay through the term of their next payment period under the terms of their lease. (ECF No. 77, 24-28.) The TRO was later amended to allow a few isolated new tenants and to permit extending some expiring leases. (*Id.* at 52-54.) On December 1, 2021, the Consolidated Case Plaintiffs removed the case to this Court. (*Id.* at 1-4.)

On December 24, 2021, the Court entered an Order Amending the TRO to allow all current tenants with valid leases to remain at the complex through February 28, 2022 but kept all other aspects of the TRO intact. (ECF No. 26.) On February 16, 2022, the Court entered an Order Lifting the TRO. (ECF No. 49.) The Court noted that the Department of Housing and Urban Development had persuasively argued that "keeping [the TRO] in place will continue the hardship on those in Shelby County who are in need of affordable housing," due to an ongoing affordable housing shortage. (*Id.* at 2.) The Court determined that "keeping [the TRO] in place would displace vulnerable tenants and would leave others in need of affordable housing with no place to go" and that leaving the TRO in place "would do more harm than good." (*Id.*) The Court finally reserved

2

the right to reinstate the TRO "should circumstances require it." (*Id.*) The Court listed the following conditions that governed "the lifting of [the TRO]."

> (1) Plaintiffs must keep the premises up to code for the Temporary Injunction/Restraining Order to remain lifted; (2) Peppertree Apartments is open to new tenants until further Order of the Court; (3) Changes adding time to a payment period, occupancy, and/or lease may be made until further Order of the Court; (4) Any signage that Peppertree Apartments is closed may be removed from the premises until further Order of the Court; and (5) Temporary barriers or boarding of the premises may be removed until further Order of the Court.

(*Id.* at 3.) The lifting was initially time limited "until the preliminary injunction hearing on Friday, March 11, 2022," but this hearing has been continued several times since, primarily because of the parties' settlement discussion, and the lift has remained in place. (*Id.* at 2); (ECF Nos. 55, 56, 58, 59, 67, 70, 71, 72, 73.)

The present motion was sparked by reports of developing structural and safety concerns at Peppertree unrelated to crime. On July 27, 2022, an elevated walkway running along the length of the second floor at one of the apartment buildings partially collapsed. (ECF No. 82-3, 2.). A different walkway connecting one apartment building to another collapsed on August 2, 2022, injuring three people. (ECF No. 82-2, 2.) In response to the August 2, 2022 collapse, Ben Frazier, a Commercial Building Inspector for the City of Memphis, went to Peppertree to perform an inspection. (*Id.*) He was not informed of the July 27 incident while on the property. During his inspection, Frazier observed numerous code violations that "were substantial and directly affected the structural integrity of the elevated structures on the property." (*Id.* at 3.) As a result, Frazier directed Peppertree's owner to enlist a structural engineer to inspect all elevated structures and ultimately repair them. (*Id.*) Frazier later returned to the property for another inspection on August 15 and found that few repairs had been undertaken.  He noted that "a concrete slab balcony" had "collapsed onto [a] first-floor tenant's porch," and issued a Code Citation. (*Id.*; ECF No. 82-6, 2.)

3

This led to a separate action in Shelby County Environmental Court that is still ongoing. (ECF No. 86, 6.)

Peppertree did enlist a structural engineer per Frazier's instruction: Julie Furr of Rimkus Consulting Group. (ECF No. 82-3, 2.) Furr's first report indicated that the elevated walkways were suffering from severe disrepair and stated they were "unsafe to remain in service in their current state." (*Id.* at 3.) Furr recommended that the walkways be removed from service, as well as the areas beneath them, or that they alternatively be "temporarily shored down the center of the metal deck span." (*Id.*) Peppertree ultimately engaged a contractor to shore up the balconies, "with 4x4 timber post and beam shoring." (*Id.*) Furr later determined that the temporary repairs were "sufficient to prevent sudden and immediate collapse." (ECF No. 86-1, 1.) Furr stated that the "walkways are safe to continue to use for normal and ordinary egress" so long as large groups did not congregate on them. (*Id.*) Farr directed management to perform daily inspections for new damage. (*Id.*) Also, the temporary measures were to be re-inspected by Rimkus every 30 days and development of a permanent solution was to begin within 60 days. (*Id.* at 1-2.) Peppertree has posted signs instructing tenants to avoid congregating on the walkways. (ECF No. 86-8.)

On August 10, 2022, Safeways, Inc. Inspector Joe Gurley inspected the property as well. (ECF No. 86-5.) The Safeways inspection noted numerous issues that needed addressing in almost every area of the property. (*Id.*) Among the issues noted were improper storage, the presence of wrecked cars, broken fences, broken vehicle access gates, graffiti, evidence of drug use, public alcohol consumption, gun fire, numerous lights out, broken windows, missing blinds and screens, electrical conduits that needed replacement, and the need to inspect and repair "all elevated walkway supports" as needed. (*Id.*)

4

On August 4, 2022, Mark Wormley, a Fire Inspector with the City of Memphis Division of Fire Services, also inspected the property. He noted that the remedy for the connecting balcony collapse on August 2, which involved walling off the balcony entirely, created "a major safety violation" by limiting the area to only one point of egress and access. (ECF No. 82-5, 2.) Wormley stated that he told Brent Frost, Peppertree's manager, about this issue, and that Frost stated he would relocate the tenants "within a couple of days to another location within the property" until the walkway was secured. (*Id.*) On August 16, Fire Services again returned to the property and placed Peppertree on "fire-watch." (*Id.* at 4.) As Wormley explained at the hearing, fire-watch requires staff to do regular patrols of the property while logging their patrol times, in order to stay abreast of any potential fires that may start. Peppertree engaged D&S Security Services, their regular security contractor, to perform the fire-watch duties. (ECF No. 86-3.). Logs of fire-watch patrols were provided to the court, but there were no logs between August 18 and August 22. (Ex. 10.) On August 17, 2022, the leasing office at Peppertree burned down, resulting in no injuries but leaving the building uninhabitable and a hazard. (ECF No. 82-1, 3.) The leasing office was relocated to a vacant unit. (ECF No. 86-7.)

The day after the fire, the City filed the present motion, arguing for a preliminary injunction seeking the following: "(i.) restraining and enjoining Peppertree from accepting new tenants; (ii.) restraining and enjoining Peppertree from renewing existing expiring leases at the Peppertree Apartments; (iii.) granting the City permission to communicate with residents of Peppertree to advise them of alternative housing." (ECF No. 82, 2.) Alternatively, the City "asks the Court to reinstate [the TRO], thereby closing Peppertree to new tenants/occupants and setting a date beyond which existing leases cannot be renewed." (*Id.*) TESCO and Peppertree filed a response in opposition on August 23, 2022. (ECF No. 86.) At the hearing on the preliminary injunction held

on August 24, 2022, and during a later follow up status conference on August 25, 2022, the City indicated that it was withdrawing its request for item (ii) above for the next 120 days. Counsel for TESCO and Peppertree also indicated that they did not oppose item (i) in light of the fact that the property is not currently accepting new leases due to the structural damage detailed above. However, TESCO and Peppertree requested that injunction be limited to 60 days, rather than 120 days as the City desired. Thus, as the Court understands the state of the case, the only outstanding issues are the length of time regarding a moratorium on accepting new residents and whether the City may communicate with current residents of Peppertree to advise them of alternative housing.

## II.    LEGAL STANDARD

There are four factors that a district court should consider when evaluating a request for a preliminary injunction: "(1) the movant's likelihood of success on the merits; (2) whether the movant will suffer irreparable injury without a preliminary injunction; (3) whether issuance of a preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of a preliminary injunction." *McNeilly v. Land*, 684 F.3d 611, 615 (6th Cir. 2012). "The four considerations applicable to preliminary injunctions are factors to be balanced and not prerequisites that must be satisfied." *American Imaging Servs., Inc. v. Eagle-Picher Indus., Inc.*, 963 F.2d 855, 859 (6th Cir. 1992). Preliminary injunctions are extraordinary remedies, and thus the proof a plaintiff must show to obtain one is "much more stringent than the proof required to survive a summary judgment motion." *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000).

## III.    LEGAL ANALYSIS

The Court will summarize the agreement reached by the parties at the hearing on August 24, 2022, and the subsequent status conference on August 25, 2022. First, the City indicated that

they were withdrawing their request for an injunction "restraining and enjoining Peppertree from renewing existing expiring leases at the Peppertree Apartments" for 120 days, with the issue to be revisited at that time. Accordingly, that request is viewed as **WITHDRAWN**, with the City reserving the right to reinstate the request in 120 days. Second, the parties indicated that they were in agreement on a moratorium on Peppertree from accepting new tenants but disagreed over the length of said moratorium. TESCO and Peppertree indicated that they preferred a 60-day period, while the City indicated they preferred a 120-day period. Finally, the parties remained in disagreement over an injunction "granting the City permission to communicate with residents of Peppertree to advise them of alternative housing."

The Court finds that a 120-day period is better supported by the record. The evidence suggests that the Peppertree property is currently in a state of disrepair, with fundamental structural problems along necessary points of ingress and egress to individual units. While TESCO and Peppertree have presented evidence of temporary repair measures at the property and state they will develop a more permanent solution in 60 days' time with help from structural engineers, that permanent solution remains wanting and would likely take more than an additional 60 days to fully implement. The original lift of the TRO was conditioned on keeping the property up to code, a requirement TESCO and Peppertree have failed to meet, and which is likely to take more than 60 days to fulfill. Further, the 120-day period would line up with the agreed timeline to revisit the City's request to prevent lease renewals, allowing the Court to revisit all relevant issues at once. Accordingly, the Court **GRANTS** the City's request for a preliminary injunction preventing Peppertree from accepting new tenants for 120 days, given the parties' agreement on the underlying issue and documented problems at the property.

7

The City maintained its request for a preliminary injunction allowing them to advise Peppertree residents of alternative housing. This was accompanied by testimony regarding a proffered relocation plan for all Peppertree residents in the event the property was to close. However, at this stage, multiple questions surround the actual implementation of the plan, including whether necessary assistance for relocating residents would be available from HUD. The request to communicate with Peppertree residents is premature given the state of the record at this time, which does not contain extensive discussion of the plan's implementation or analysis of how potential court rulings, HUD actions, or case outcomes would affect the implementation. Accordingly, the City has not carried their burden regarding this request, and it is **DENIED.**

The City's Motion is therefore **GRANTED IN PART AND DENIED IN PART**. Peppertree is hereby enjoined from accepting new tenants, per their agreement, for 120 days. Consistent with this Order, the Court will revisit issues surrounding new tenants and the renewal of current leases in 120 days' time.

**IT IS SO ORDERED** this 29th day of August, 2022.

_**s/John T. Fowlkes, Jr**._
JOHN T. FOWLKES, JR.
UNITED STATES DISTRICT JUDGE